# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                  Case No. 18-CR-1575-WJ

MIKKO SEKIYA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND ALL
## STATEMENTS AND TO DISMISS ALL CHARGES

**THIS MATTER** comes before the Court on *pro se* Defendant's "Motion to Suppress Evidence & All Statements and to Dismiss All Charges," filed October 15, 2018. **(Doc. 33)**. Having reviewed the parties' briefs and applicable law, Defendant's Motion is **DENIED**.

## BACKGROUND

On January 11, 2018, Albuquerque Police Department Officer Estevan Correa was dispatched to M&F Auto Sales, for a report of a stolen truck. [R. Doc. 38, filed October 29, 2018 at 2].[1] The vehicle was described as a white Toyota Tundra with no license plate, black wheels, and an M&F Auto Sales sticker on the top left side of the tailgate. [Id.] Officer Correa was shown a photograph of the stolen truck, and the vehicle was last reported driving at an intersection on the westside of Albuquerque, New Mexico. [Id.] A few hours later, Officer Correa and Officer Lawrence Monte saw the vehicle matching the exact description driving near them. Both officers observed Defendant exit the vehicle and walk toward an apartment. [Id.] At this point, Sergeant David Nix arrives to the scene to assist both officers. [Id.] Sergeant Nix approached Defendant

---

[1] Defendant's Motion does not state the factual background of his case and Defendant failed to file a reply to the government's response within the set deadline. As a result, most of the factual background is taken from the response as Defendant did not dispute these facts.

from the apartment office and asked to speak with him, as the other officers onlooked from the apartment complex parking lot. [Id.] The officers observed Defendant carrying a bundle of clothes and saw Defendant reach into his pockets. Defendant was instructed to put the items down, and Defendant immediately thereafter stated that he was "an FBI agent." [Id.] Defendant was instructed to turn around and put his hands behind his back. [Id.]

As Defendant turned around and put his hands behind his back, Sergeant Nix asked Defendant if he had any weapons on him, specifically guns or knives. [Id.] Defendant responded that he did have a gun in his left pocket. [Id.] Officer Correa then conducted a search of Defendant's person and Sergeant Nix retrieved a loaded firearm. [Id.] Immediately thereafter, Defendant was handcuffed and placed in a patrol unit, as the officers continued an investigation. [Id. at 3] Without being questioned, Defendant identified himself as an FBI agent and stated that his name was Mikko Sekiya. [Id.] Sergeant Nix then ran the firearm's serial number and truck VIN number and confirmed both as stolen. [Id.]

Once officers determined that the firearm was stolen, Defendant was placed under arrest for possession of a stolen firearm. [Id.] The officers then conducted a full search of Defendant's person and located meth in his pocket. [Id.] Defendant was not questioned regarding the incident prior to the arrest, and once arrested was questioned regarding his identifying information, including name, social security number, and date of birth. [Id. at 3-4]

Defendant filed the present Motion asking the Court to suppress evidence and statements obtained from his arrest on January 11, 2018 for alleged constitutional violations under the Fourth and Fifth Amendment. [R. Doc. 33]. Defendant was indicted on stealing a firearm from a business licensed to engage in the dealing of firearms in violation of 18 U.S.C. Section 922(u), and possession of a firearm by a convicted felon in violation of 18 U.S.C. Section 922(g)(1). [R. Doc.

1, filed May 9, 2018]. On October 5, 2018, the Court granted Defendant's Motion to Proceed *pro se* and Mr. Padilla's Motion to Withdraw allowing Defendant to proceed in this matter as a *pro se* defendant and allowing his attorney, Alonzo Padilla, to withdraw as his attorney. [R. Doc. 26, filed October 5, 2018].

**DISCUSSION**

It appears from Defendant's *pro se* Motion and the government's response that there are three issues to be resolved:

1. Whether there was reasonable suspicion for the initial investigatory detention of Defendant;
2. Whether Defendant's statements regarding weapons were obtained in violation of his constitutional rights; and
3. Whether there was probable cause to search and arrest Defendant.

The Court emphasizes that "[t]he hazards which beset a layman when he seeks to represent himself are obvious." *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977). Nevertheless, "[h]e who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an "advocate" for or to assist and guide the pro se layman [. . . .]" *Id.* (citations omitted).

**I.  Reasonable Suspicion for Initial Investigatory Detention**

The Fourth Amendment protects people against unreasonable seizures of "their persons, houses, papers, and effects." U.S. Const. amend. IV; *Soldal v. Cook County*, 506 U.S. 56, 62 (1992). A police officer "may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). An investigatory detention "is justified at

its inception if 'the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime.'" *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (quoting *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990)), *cert. denied*, 556 U.S. 1251 (2009). "Reasonable suspicion requires the officer to act on something more than an inchoate and unparticularized suspicion or hunch[.]" *United States v. Hauk*, 412 F.3d 1179, 1186 (10th Cir. 2005) (citation and internal quotation marks omitted). However, it requires "considerably less than proof by a preponderance of the evidence or that required for probable cause." *DeJear*, 552 F.3d at 1200. "In determining whether reasonable suspicion exists, courts look to the totality of the circumstances, rather than assessing each factor or piece of evidence in isolation." *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (citation and internal quotation marks omitted). Courts ask "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *Id.* (citation and internal quotation marks omitted).

It is undisputed that Defendant was seized for Fourth Amendment purposes pursuant to an investigatory stop and detention when Sergeant Nix approached Defendant from the apartment office and asked to speak with him, as the other officers onlooked from the apartment complex parking lot, and he was instructed to put the items down, and then instructed to turn around and put his hands behind his back. *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) ("[A] Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen submit[s] to the assertion of authority."(citation and internal quotation marks omitted) (alteration in original)).

The officers had reasonable suspicion to conduct the investigatory detention because Officer Correa was on the lookout for a stolen vehicle and saw Defendant driving and then exit

the described stolen vehicle. At that moment, all officers, including Sergeant Nix, had the necessary articulable facts to conduct an investigatory detention in order to investigate a possible crime. *United States v. Chavez*, 534 F.3d 1338, 1347 (10th Cir. 2008) (the Tenth Circuit has held that officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, and to develop probable cause for arrest). At this point Defendant is yet to be searched or even to be touched by any law enforcement official. Thus, the next inquiry is whether the statements made by Defendant to the officers, which resulted in the search of Defendant were in violation of his Fifth Amendment rights.

II. **Statements Made by Defendant to Officers**

"Miranda requires that procedural safeguards be administered to a criminal suspect prior to custodial interrogation." *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). A statement taken during a custodial interrogation in violation of the *Miranda* rule cannot be admitted at trial to establish the defendant's guilt. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). Before *Miranda* is applicable, however, two requirements must be met: (1) "the suspect must be in 'custody,' and (2) the questioning must meet the legal definition of 'interrogation.'" *Perdue*, 8 F.3d at 1463. "[A] person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" Id. (quoting *Miranda*, 384 U.S. at 444). The "relevant inquiry" with regard to custody is" 'how a reasonable man in the suspect's position would have understood his situation.'" *Id.* (quoting *Berkemer*, 468 U.S. at 442). Concerning the second requirement, "interrogation includes 'any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, (1980) (footnotes omitted)).

Nevertheless, an officer may question a suspect in custody without first giving the *Miranda* warnings if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon." *New York v. Quarles*, 467 U.S. 649, 659 n. 8 (1984). This circuit has applied the *Quarles* public safety exception to allow an officer to ask a suspect, "Do you have any guns or sharp objects on you," without first giving the Miranda warnings. *United States v. Lackey*, 334 F.3d 1224, 1225 (10th Cir. 2003). Under *Quarles*'s public safety exception, "[f]or an officer to have a reasonable belief that he is in danger, at minimum, he must have a reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *DeJear*, 552 F.3d at 1201 (10th Cir. 2009) (internal quotation marks and citation omitted). The government has articulated a reasonable belief of how the officers believed that the officers were in danger, and they believed Defendant might have or recently had a weapon, and that he might gain access to that weapon and inflict harm with it.

The government's argument is that the officers saw Defendant driving and exit a stolen vehicle and he "became defensive, reached in his pockets, and claimed that he was with the FBI" when confronted by the officers. [R. Doc. 38 at 6]. The Court agrees that when Defendant reached in his pockets, the officers could reasonably believe that Defendant "might have (or recently have had) a weapon" and that Defendant could gain access to that weapon if it was in his pockets because he was just seen committing a potential crime, since he was driving and exited a stolen vehicle. Immediately thereafter the officers asked a limited question regarding weapons to which Defendant responded he had a gun in his left pocket. Therefore, the exception excuses the failure to give *Miranda* warnings prior to questioning Defendant about any weapons.

### III. Probable Cause to Search and Arrest Defendant

The Fourth Amendment governs pat-down searches of an individual for weapons, and as a result a pat-down is constitutionally valid only if it is reasonable. U.S. Const.amend. IV; *see Terry*, 392 U.S. 1. A reasonable pat-down occurs when an officer has "reasonable suspicion that a person is armed and dangerous." *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir.2007); *see also Terry*, 392 U.S. at 27. Here, there is no question that the officers knew that Defendant was armed as he admitted he was armed, and the officers had reason to believe he was dangerous because he was seen driving a stolen vehicle. *Cf United States v. Fager*, 811 F.3d 381, 385 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 293, 196 L. Ed. 2d 214 (2016) (the Tenth Circuit has upheld pat-down searches "[e]ven when an officer had limited specific information leading him to believe that [an individual] was armed or dangerous and no knowledge of the individual's having possessed a weapon." (citations and internal quotation marks omitted)). Also, the fact that the officers handcuffed Defendant and placed him in the patrol car did not make the detention unreasonable. *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002) ("[A] *Terry* stop does not become unreasonable just because police officers use handcuffs on a subject or place him on the ground."). Therefore, there was probable cause to conduct the search without a warrant.

An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested. *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir. 2006). Here, once the officers conducted their investigation they had knowledge that the weapon possessed by Defendant were stolen, and that the vehicle was stolen. Defendant was arrested for being in possession of a stolen firearm, and the officers then conducted a full search incident to arrest and found meth in his pocket. Nothing

in the record points to a warrantless search and arrest that was not supported by probable cause. Therefore, the officers had probable cause to arrest and search Defendant without a warrant.

## CONCLUSION

**IT IS THEREFORE ORDERED** that *pro se* Defendant's "Motion to Suppress Evidence & All Statements and to Dismiss All Charges," filed October 15, 2018. **(Doc. 33)**, is **DENIED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE